This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: <u>February 13, 2014</u>**

**DAVID GORDON,**

    Petitioner,

v.                                                          **NO. 33,817**

**STATE OF NEW MEXICO,**
**GARY KING, Attorney General, et al.,**

    Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**James Waylon Counts, District Judge**

Jorge A. Alvarado, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Respondents

**DECISION**

**BOSSON, Justice.**

{1}     On December 26, 2012, this Court granted certiorari to determine whether Defendant David Gordon's conviction for two counts of conspiracy, *see* NMSA 1978, Section 30-28-2 (1979), violated his constitutional right to be free from double jeopardy under the standard set forth in *State v. Gallegos*, 2011-NMSC-027, ¶¶ 55-56, 149 N.M. 704 254 P.3d 655 (holding that there is a rebuttable presumption of one overarching conspiracy when there are multiple substantive crimes).

{2}     For the reasons discussed below, we hold that because the State did not overcome the rebuttable presumption that there was one overarching conspiracy, *see id.*, double jeopardy protections require that Gordon's lesser conspiracy convictions must be vacated. Accordingly, we remand to the district court for resentencing consistent with this decision.

**BACKGROUND**

{3}     Police obtained a search warrant for the residence at 722 Delaware, and conducted surveillance "to see . . . if there was any activity of drugs sales at that time." Gordon was not named in the search warrant, but his driver's license listed 722 Delaware as his residence. Police observed foot and vehicle traffic, which they felt was indicative of drug trafficking activity. After assembling the search warrant team,

they executed the search warrant at the residence, where Gordon was sitting inside the house on the couch. Police secured the residence and began the process of searching and collecting drug-related evidence.

{4} From the residence, police seized a shaving cream can with a false compartment, sandwich baggies, marijuana blunt cigars, loose marijuana in a baggie, a digital scale with cocaine residue on it, baking soda, razor blades, a copper scrubbing pad, two measuring cups with cocaine residue, a baby food jar, and crack cocaine.

{5} Police found cocaine in a baggie and $590 in cash in Gordon's pocket. Gordon admitted to possessing cocaine and crack, but insisted that the amounts found in the house were for personal use by himself and Angelo Smith, who also lived in the residence and was also arrested, but that he was not trafficking. Gordon also admitted they cooked crack at the house.

{6} At trial police officers testified that when interviewed, Gordon mentioned "they purchased two 8-balls" of powder cocaine and "rocked up" one of them, meaning they "[converted] it up to crack cocaine." Officers also testified that the amount of drugs seized was consistent with trafficking. Gordon's latent fingerprints were identified on the small measuring cup. Police discussed the process of manufacturing crack cocaine,

including how the items seized would have been used in the process. The State also presented opinion evidence that the sandwich baggies and the scale were indicative of drug trafficking because drug users who were not involved in trafficking would not typically use those items.

**DISCUSSION**

{7} Double jeopardy analysis is a constitutional question we review de novo as a matter of law. *Gallegos*, 2011-NMSC-027, ¶ 51. In *Gallegos,* this Court addressed the question of whether multiple conspiracy convictions might raise double jeopardy concerns. *Id.* ¶¶ 27-64. Looking at the text, history, and purpose of the New Mexico conspiracy statute, *see id.* ¶¶ 51-54, we concluded "that the Legislature established . . . a rebuttable presumption that multiple crimes are the object of one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed." *Id.* ¶ 55. The state may present evidence of multiple separate agreements; however, it has a "heavy burden" to overcome to show multiple separate agreements instead of one overarching agreement. *Id.*

{8} This Court then adopted "the totality of the circumstances test utilized by the federal circuits [as] the best mechanism" to determine whether there were multiple agreements, thus "demonstrating the existence of more than one conspiracy." *Id.* ¶ 56.

4

The multi-factor test analyzes whether:

> (a) the location of the two alleged conspiracies is the same; (b) there is a significant degree of temporal overlap between the two conspiracies charged; (c) there is an overlap of personnel between the two conspiracies, (including unindicted as well as indicted coconspirators); and (d) the overt acts charged and (e) the role played by the defendant . . . [in the alleged conspiracies are] similar.

*Id.* ¶ 42 (quoting *United States v. Rigas*, 605 F.3d 194, 213 (3d Cir. 2010)). The Court also noted several related factors, including "(1) whether there was a common goal among the conspirators; (2) whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators; and (3) the extent to which the participants overlap in the various dealings." *Id.*

{9}     In *Gallegos*, the conspiracy revolved around the murder of the victim by a number of individuals over the course of six to eight hours, initiated through kidnaping, and ultimately accomplished by a combination of drug overdose and setting the victim afire after a number of unsuccessful attempts by other methods. *See id.* ¶¶ 5-14. The defendant was convicted of three counts of conspiracy, *id.* ¶ 2, and argued that such a conviction violated double jeopardy protections. *Id.* ¶ 3. We held that the State did not adequately rebut the presumption that there was one, overarching, conspiratorial agreement. *Id.* ¶ 57.

{10}     Applying the totality of the circumstances test, the Court reasoned that the separate conspiracy charges, relating to the multiple criminal acts charged, each required the jury to determine that "[d]efendant and his confederates contemplate[d] inflicting great bodily harm or death." *Id.* ¶ 57. The Court found that since the intended outcome of the criminal acts was similar, there should be criminal liability for "no more than one, severe punishment set by statute at the 'highest crime to be committed.'" *See id.* Further, the "relatively short time frame . . . support[ed] the existence of one conspiracy," *id.* ¶ 58, where there was a series of events over the course of a number of hours "which was continuous and undisturbed by any intervening event." *Id.* ¶ 60. Also, all the conspirators acted in concert and took part in each of the substantive crimes. *Id.* ¶ 61. Finally, the Court noted that "the objectives of a single agreement may change over time without such changes creating a new agreement." *Id.* ¶ 62. In this way, a number of incremental objectives may be accomplished or altered in the process of accomplishing the "central objective" of the conspiracy, without affecting the agreement to accomplish the central objective. *See id.*

{11}     In the case before us, the State argues that manufacturing crack cocaine from powder cocaine (a general intent crime) is a different and distinct act from possessing

cocaine in amounts consistent with the intent to distribute (a specific intent crime), and, therefore weighs in favor of finding a separate agreement. In this way, the State reads *Gallegos* to focus on the overt acts committed. However, this reading does not embrace the nuance of this Court's analysis, nor does it address that the crime charged is trafficking a controlled substance via two different means or acts. In looking at the agreement or conspiracy, *Gallegos* focused on the fact that the intent was the same for each of the conspiracy charges, *see id.* ¶ 57, not whether the means or overt acts used to accomplish the intended objective were the same. Here, the intent is also the same.

{12}    The State also points out that there was only one victim in *Gallegos*, but argues here that there are different evils, if not different potential victims. Thus, the agreements to manufacture and possess with intent to distribute are worthy of separate punishments because manufacturing is a different evil from distributing illegal drugs. For support, the State relies on the fact that crack cocaine is viewed as different and more dangerous than powder cocaine. This argument makes much of the fact that the molecular structure changes one drug into another, but that is not a concern reflected in the trafficking statute, which covers multiple illegal drugs. *See* NMSA 1978, § 30-31-20(A)(1), (3) (2006) (defining trafficking as manufacturing, distributing, or possessing with intent to distribute any of a number of listed controlled substances

without reference to which are considered more dangerous).

{13} Addressing both of the State's arguments, the substantive crime for both conspiracy charges in this case is trafficking. *See id.* The jury instructions for both conspiracy counts required the jury to determine that Gordon "intended to commit Trafficking a controlled substance." *See* UJI 14-2810 NMRA. Thus, as was the case in *Gallegos*, the jury was to required to determine that Gordon had the identical intent for both conspiracy charges. The objective of any agreement to traffic an illegal substance is to traffic, which may be accomplished by either manufacturing or possessing with an intent to distribute, either independently or in concert. Nevertheless, the objective is to traffic, not solely to possess or manufacture, and therefore does not weigh in favor of finding more than one agreement.

{14} The State further argues that the time frame is long enough to support multiple agreements, because the manufacturing and the possessing were not simultaneous. But simultaneity is not required when analyzing the particularities of the conspiratorial time frame. Here, while the manufacturing and the possessing may have occurred on different days, May 4 and May 5, Gordon was in possession of the illegal substances on both days, over a period of time that it appears was continuous and undisturbed by an intervening event. *See Gallegos*, 2011-NMSC-027, ¶ 60. Thus, this factor weighs

8

in favor of a single agreement.

{15} The State also argues for a separate agreement to possess and to manufacture, emphasizing the distinctness of the crimes when it analyzes whether the conspirator's actions were overlapping and mutually dependent, but the State offers no evidence to support this claim. Further, the State does not address the fact that all the conspirators took part in each of the substantive crimes, a factor that weighs here, in favor of a single agreement, as it did in *Gallegos*. *See id.* ¶ 61.

{16} The State does not address in its briefing a final consideration raised in *Gallegos*, whether the central objective of the agreement changed or instead, whether there were incremental changes to intermediate objectives that occurred in the process of accomplishing the central objective of the conspiracy. *See id.* ¶ 62. As the substantive crime in both cases is trafficking, it is unclear how the Court would meaningfully distinguish whether Gordon entered into (1) an agreement to traffic by manufacturing and also a separate agreement to traffic by possession or (2) one overarching agreement to accomplish trafficking by both manufacturing and possession. In any case, the State presented no evidence of two separate agreements, which is precisely the burden we placed upon the State in *Gallegos*.

{17} Finally, in its briefing, the State did not question whether *Gallegos* should be

applied retroactively to habeas corpus petitions as a matter of law. Accordingly, we do not address that issue in deciding this case, and leave it to a future petition for resolution.

**CONCLUSION**

{18}     We remand this case to the district court to vacate one of Gordon's convictions for conspiracy to commit trafficking of a controlled substance and resentence Gordon consistent with this decision.

{19}     **IT IS SO ORDERED.**


_____
                                    **RICHARD C.  BOSSON, Justice**


**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Chief Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**